## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

TREK, Inc.,

       Plaintiff,

vs.                        Case No:  2:16-cv-13767-SJM-RSW
                               Hon. Stephen J. Murphy III

ITR AMERICA, LLC, MARK
DAVIS, and JAMES MARCUM,

       Defendants.

_____/

John S. Artz (P48578)
Chelsea M. Smialek (P80015)
DICKINSON WRIGHT PLLC
2600 W. Big Beaver Rd., Ste. 300
Troy, Michigan 48084
(248) 433-7200
jsartz@dickinsonwright.com
csmialek@dickinsonwright.com

*Attorneys for Plaintiff*

_____/

## FIRST AMENDED VERIFIED COMPLAINT

NOW COMES Plaintiff, TREK, Inc. ("TREK"), by its counsel, Dickinson

Wright PLLC, and for its First Amended Verified Complaint against Defendants

ITR America, LLC ("ITR"), Mr. Mark Davis ("Davis"), and Mr. James Marcum

("Marcum")  (collectively referred to as "Defendants"), states as follows:

1

## PARTIES, JURISDICTION, & VENUE

1.      TREK is a corporation formed in Delaware with its principal place of business located in Novi, Michigan.

2.      Upon information and belief, ITR is a limited liability company formed in Mississippi with its principal place of business in Hobart, Indiana.

3.      Upon information and belief, ITR conducts business in and throughout the State of Michigan.

4.      Upon information and belief, Defendant Davis, a former employee of TREK, was at all times relevant to this lawsuit a citizen of Michigan.

5.      Upon information and belief, Defendant Marcum, a former employee of TREK, was at all times relevant to this lawsuit a citizen of Nevada. At all times relevant to this lawsuit, during the time Marcum was an employee of TREK, Marcum frequently conducted business in and would travel to Michigan for meetings. He also committed tortious conduct in Michigan and/or caused consequences of such tortious conduct to occur in Michigan.

6.      This Court has subject matter jurisdiction over the claims arising under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.* pursuant to 28 U.S.C. § 1331

(federal subject matter jurisdiction). This Court further has subject matter jurisdiction over any supplemental state law claims pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction) because they are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

7.      Venue is properly laid in this judicial district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted in this complaint occurred in Michigan.

## COMMON ALLEGATIONS

8.      TREK sells components related to the construction equipment industry.

9.      TREK engages in both interstate and foreign commerce.

10.     Upon information and belief, ITR sells components related to the construction equipment industry.

11.     Upon information and belief, ITR engages in interstate and foreign commerce.

12.     ITR and TREK are competitors.

3

13.    TREK has invested significant time, effort and resources to develop and maintain its inventory, technical, and customer information databases.

14.    For example, among other things, TREK's inventory information database is a compilation of detailed data that includes, without limitation, a cross-referenced database using a unique TREK-specific cross reference number for OEMS classified and cross referenced by TREK's code, which enables its user to input specific codes to pull an OEMS' corresponding information, including, for example, product parts, descriptions, quantity on hand, class number, brand and model specifications, and usage rates. Investment in inventory maintenance strategy is important to make sure that the goods needed by a customer are available and also to ensure that there is not excessive stock in the warehouse.

15.    Similarly, TREK's technical information database is a compilation of data and processing used, for example, to confirm and/or cross reference customer inquiries regarding specific dimensional questions with available products, complete dimensional specifications for a customer order, or confirm fitment.

16.    In addition, among other things, TREK's customer information database was derived from its long-standing business relationship between TREK and each individual customer, which culminated in non-publicly available information, including, without limitation, customer ID and name, contact

information, product preferences, individualized pricing rules, sales data, and sales margin for each customer.

17.     TREK has also invested significant time and effort developing its customer information, pricing information, and sales data.

18.     The above information is considered confidential, proprietary, and trade secret information that has given Plaintiff an opportunity to obtain an advantage over competitors who did not know or use them.

19.     Davis, a former branch manager of TREK in Michigan for Sales & Purchasing, left TREK on July 22, 2016 to work for ITR. At present, Davis works in Rubber Track Purchasing for ITR.

20.     When Davis was an employee of TREK, he signed an Employee Confidentiality Agreement.  Davis retained the original copy of the Employee Confidentiality Agreement.  However, as an employee of TREK, he also signed and agreed to abide by the Policies and Programs of TREK.  Davis agreed to the terms of the Policies and Programs on December 9, 2013.[1]  (**Ex. 1**).

21.     The Policies and Programs of TREK provides, in relevant part, that "[a]t all times during employment, and after the employment relationship ceases,

---

[1] In fact, all of TREK's employees sign and agreed to be bound by the Policies and Programs of TREK.

you shall not directly or indirectly disclose, divulge, transfer or use, for any purpose whatsoever, any of such Proprietary and Confidential information to any third party unless authorized to do so to perform your job responsibilities.  You must at all times take all measures possible to protect the confidentiality of all such information to which they have access or direct control over. If your employment is terminated, you need to return to us [TREK] all of our Proprietary and Confidential information that is in your possession." (**Ex. 1**).

22.    Just like the Employee Confidentiality Agreement, the Policies and Programs of TREK defined Proprietary and Confidential information to include, without limitation the following: "information relating to customers, costs, business studies, business procedures and strategy, finances, sales and marketing data, methods, sales projections, plans and efforts, identities of customers, contractors and suppliers and prospective customers, the terms of contracts and agreements with customers, contractors and suppliers, Trek's and its affiliates' relationship with actual and prospective customers, contractors and suppliers and the needs and requirements of, and Trek's and its affiliates' course of dealing with, any such actual or prospective customers, contractors and suppliers, personnel information, customer and vendor credit information, methods of production, manufacture, service, research, computer codes or instructions, computer processing systems and techniques, hardware and software configurations, designs,

6

architecture, interfaces, plans, sketches, blueprints, any other materials prepared or used by Trek and its affiliates in the course of, relating to or arising out of the business or prepared by any other employee of Trek and its affiliates or contractor for Trek and its affiliates that have not been made available to the general public." (**Ex. 1**).

23.    By signing the Employee Confidentiality Agreement and the Policies and Programs, Davis agreed not to use, disclose, transfer, or divulge proprietary and confidential information.  He also agreed to return to TREK any and all company property in his possession at the time of termination. (**Ex. 1**).

24.    In his role as a branch manager for TREK, Davis was intimately familiar with and involved in the development and maintenance of the customer information database as well as the inventory and technical information databases. In fact, Davis was responsible for updating the inventory, technical, and customer information databases to enhance TREK's business performance.  Furthermore, as an employee of TREK who worked in purchasing, Davis had extensive rubber and track information relevant to this current position at ITR in Rubber Track Purchasing.

25.    Davis agreed to maintain the confidentiality and secrecy of the information.  (**Ex. 1**).

26.     Upon information and belief, after deciding to leave TREK to go work for ITR, but prior to leaving his position with TREK, Davis exceeded authorized access and/or accessed without authorization TREK's computer system and downloaded onto a portable hard drive all information from that computer. Specifically, Davis downloaded confidential inventory information specific to TREK's business, including without limitation all the items' part class, reference number, description, and specification by brand and model by using his employee computer even though no longer planned on working for TREK.   Davis also downloaded customer information that was otherwise not publicly available, including without limitation customer identification and name, contact information, and, most critically, customer-specification information, such as product preferences and pricing rules, details of sales, profit margins, and sales data.  This information is considered confidential and trade secret information. (*See* **Ex. 1**).

27.     Upon information and belief, after downloading this information, Davis thereafter deleted this information from the TREK computer as well as the log record, which tracks login information and other activity that a user performs while logged onto a computer system.  In fact, a forensic expert hired by TREK to investigate the extent and damage of the deleted files determined that only a specialist could have erased the information Davis deleted, indicating that Davis

had outside help and was ordered to erase the data.  The forensic expert hired by TREK further indicated that most individuals do not know how to delete the information Davis deleted.

28.    Upon information and belief, Davis was induced by ITR to take confidential, proprietary and trade secret information of TREK and leave his employment with TREK to work for ITR.

29.    Upon information and belief, Davis used and disclosed the confidential, proprietary and trade secret information of TREK for purposes of enabling ITR to compete with TREK.

30.    Marcum, a former branch manager of TREK in Nevada for Sales, left TREK on June 3, 2016 to work for ITR.  At present, Marcum is warehouse manager for ITR.

31.    When Marcum was an employee of TREK, he signed an Employee Confidentiality Agreement January 3, 2011, attached hereto as **Exhibit 2**.  By signing the Employee Confidentiality Agreement, Marcum agreed to hold in trust and to not use or disclose confidential information.  He also agreed to return to TREK any and all company property in his possession at the time of termination, including, without limitation, documents pertaining to TREK's business and other

confidential information. Critically, confidential information was defined in the Employee Confidentiality Agreement to include, without limitation:

    i) financial and other operating data except as published or released by Company [TREK],

    ii) marketing strategy,

    iii) names of actual or potential customers or suppliers and transactions with them,

    iv) any information on Company's intranet, and

    v) plans for future conduct of all phases of Company business. [(**Ex. 2**).]

32.     Marcum further agreed to the following:

I understand that Confidential information includes information about Company's intellectual property, including unpublished inventions and trade secrets, in the following areas:

    i) manufacturing process and operating procedures

    ii) research and development plans and results

    iii) formulae, properties, and designs of Company product,

    iv) software in various stages of development, including computer programs

I understand that Confidential Information includes trade secrets of confidential information about Company's customers, suppliers, and other third parties with whom Company transacts business.

I understand that Confidential information includes personal information about individual customers, customer's employees, and other Company employees.

> I understand that Confidential information includes information that does not fall in any of the categories listed above but is generally information or material that is not generally available to or used by others or the utility or value of which is not generally known or recognized as standard practice, whether or not the underlying details are known in the public domain. [(**Ex. 2**).]

33.    In his role as a branch manager for TREK, Marcum was intimately familiar with and involved in the development and maintenance of the customer information database as well as the inventory and technical information databases. In fact, Marcum was responsible for updating the inventory, technical, and customer information databases to enhance TREK's business performance.

34.    Marcum agreed to maintain the confidentiality and secrecy of the information.  (**Ex. 2**).

35.    Upon information and belief, after deciding to leave TREK to go work for ITR, but prior to leaving his position with TREK, Marcum exceeded authorized access and/or accessed without authorization TREK's computer system and downloaded all information from that computer onto his personal computer for purposes not consistent with his job responsibilities.   Specifically, Marcum downloaded inventory information specific to TREK's business, including without limitation all the items' part class, reference number, description, and specification by brand and model by using his employee computer even though no longer

planned on working for TREK.  Marcum also downloaded customer information that was otherwise not publicly available, including without limitation customer identification and name, contact information, and, most critically, customer-specification information, such as product preferences and pricing rules, details of sales, profit margins, and sales data.  This information is considered confidential and trade secret information. (*See* **Ex. 2**).

36.    Upon information and belief, after downloading this information, Marcum thereafter deleted this information from the TREK computer.

37.    Upon information and belief, Marcum was induced by ITR to take confidential, proprietary and trade secret information of TREK and leave his employment with TREK to work for ITR.

38.    Upon information and belief, Marcum used and disclosed the confidential, proprietary and trade secret information of TREK for purposes of enabling ITR to compete with TREK.

39.    As previously indicated, without TREK's specific and unique inventory maintenance information, a competitor is unable to do business with OEMS utilizing those specialized referencing numbers.

40.     Brandt Tractor is a customer of TREK.   As the number one John Deere dealer in the world, Brandt Tractor is one of the top customers in the North American Undercarriage Aftermarket business.

41.     TREK was a major supplier to Brandt Tractor.

42.     As a customer, Brandt Tractor had broad access to, and TREK entrusted it with, TREK's confidential, proprietary and trade secret information, including, without limitation, intimate knowledge of the item price list, purchase information and sales data, and TREK-specific reference numbers for all items. Indeed, Brandt Tractor was necessarily given access to this information in its course of dealings with TREK, specifically, when TREK would submit pricing quotes to Brandt Tractor.   Brandt Tractor, including without limitation its employees, agents, representatives, agreed to maintain the confidentiality of each and every pricing bid received from TREK. Indeed, it was industry practice to do so.

43.     Moreover, every email, quote, and invoice, among other things, was sent pursuant to this expectation of confidentiality in accordance with industry standard and labeled "Confidential" accordingly.   Specifically, quotes and invoices to customers were sent containing the following language: "IMPORTANT NOTICE: This message is intended only for the use of the individual or entity to

which it is addressed. The message may contain information that is privileged, confidential, and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender by return e-mail and erase all copies."  With respect to Brandt Tractor, quotes for their orders were always sent with the following language:  "Disclaimer: This e-mail, including any attachments, may contain confidential information and is intended solely for use by the individual to whom it is addressed. If you received this e-mail in error, please notify the sender, do not disclose its contents to others, and delete it from your system. Any other use of this e-mail and/or attachments is prohibited. This message is not meant to constitute an electronic signature or intent to contract electronically."

44.    Andrew Andres ("Andres") was a former employee of Brandt Tractor. Andres left his position at Brandt Tractor in December 2015.

45.    As an employee of Brandt Tractor, Andres worked in Product Control Management and was in charge of TREK purchasing.

14

46.     During his employment with Brandt Tractor, specifically with respect to his role in purchasing, Andres necessarily had access to the same confidential, proprietary and trade secret information discussed above in order to perform his duties.  Indeed, it was to Andres that TREK submitted its quotes.  Thus, Andres was expected to maintain confidentiality of the confidential and proprietary information submitted with TREK quotes pursuant to Brandt Tractor and TREK's expectation of confidentiality and in accordance with standard industry practice.

47.     Upon information and belief, Andres was induced by ITR to take confidential, proprietary and trade secret information of TREK and thereafter leave his employment with Brandt Tractor to work for ITR.  Prior to leaving his position at Brandt Tractor, Andres told a TREK branch manager precisely that.

48.     Upon information and belief, Andres brought from Brandt Tractor to ITR every single item pricing, among other things.

49.     Upon information and belief, Defendants Marcum and Davis brought to ITR from TREK customer pricing rules, among other things.

50.     Upon information and belief, every TREK sales person knows the pricing rules of Brandt Tractor as it is TREK's biggest customer.  Thus, by disclosing the customer pricing rules and using Brandt Tractor as a benchmark by

which to interpret how the pricing rules operate, ITR now has access every single item pricing of TREK, which detrimentally affects its business.

51.    Upon information and belief, ITR has also knowingly and intentionally accessed without authorization TREK's computer system.

52.    By way of background, TREK uses EZQUOTE, an online content management system that connects to TREK's internal databases which contain limited information regarding confidential inventory and related data about TREK's products.    TREK customers are allowed to access the limited data available on the EZQUOTE system from TREK's website if they have been approved by TREK's management and given personalized login credentials.

53.    Because TREK assigns each customer its own login credentials, TREK has the ability to know which company has access to the EZQUOTE system.    TREK customers must be approved by management to receive login credentials, and they receive login credentials only if they agree to maintain the confidentiality of the EZQUOTE system.

54.    Moreover, TREK uses Microsoft Great Plans System (the "GP System") as its Enterprise Resource Planning System (the "ERP").    The GP System is a private, confidential system that is hosted on internal servers to which only TREK employees have access.    It is not accessible via an internet browser.    It

is TREK's network infrastructure that connects all its branches within secure and point to point internet connectivity, so that it is private.

55.    Importantly, the information available via the GP System and ERP is qualitatively different than the information available on the EZQUOTE system.

56.    The ERP is a private, confidential, and secure internal network that contains all of TREK's confidential, proprietary, and trade secret information of TREK, including without limitation, financial data, GL, statement, costs, AR, AP, inventory maintenance processes, customer information and sales data.

57.    In order to access the GP System, and thus, the ERP, the accessor must have an account set up, which is completely separate from the EZQUOTE account setup discussed above. In addition, the accessor must be given login credentials along with a computer configuration performed only by TREK's technology department.

58.    The computer configuration is only implemented on TREK's staff workstations to connect to the GP System and uses very specific connectivity information to allow TREK workstation computers to connect to the GP System.

59.    In sum, the only manner in which the GP System, and therefore, the ERP, could be accessed is to have GP System login credentials (which are only provided to TREK employees) as well as the computer configuration information.

60.    TREK utilizes firewall by WatchGuard to protect the infrastructure against viruses, spam, unwanted traffic which logs all external internet traffic.

61.    In order to find out if there were any communication between TREK's EZQUOTE system and ITR, TREK performed a reverse lookup to compare IP addresses that were connecting to the firewall at TREK.   The reverse lookup included the following steps:

i)  The WatchGuard Firewall Logs were retrieved;

ii) These logs were imported into Microsoft Access and Excel applications to analyze the data;

iii) Traffic from all external customers' IP addresses related to EZQUOTE SYSTEM were filtered out; and

iv) The remaining IP Addresses were mapped to their physical locations as follows:

- An application to mass produce a file for mapping the remaining IP Addresses to their respective physical locations;

- This file was imported into Google Earth and Google Map to visualize the actual locations;

62.     TREK's Website Hosting Server's traffic logs provide the date and time for when someone logins into the system from inside of the network.  The traffic logs demonstrate that ITR has accessed TREK's network.

63.     This process revealed that IP addresses from ITR's network made repeated direct connections to TREK's computer via the EZQUOTE system.  This discovery was verified with GeoLocation and using public records from AT&T that show ITR uses the IP addresses in question.

64.     Upon information and belief, ITR, without authorization, accessed TREK's computer systems and obtained valuable confidential, proprietary and trade secretion information.

65.     Using the process described above, TREK has also discovered that IP addresses from ITR's network also accessed TREK's GP System and ERP. This discovery was also verified with GeoLocation and using public records from AT&T that show ITR uses the IP addresses in question.

66.     As stated previously, the only way to connect to the GP System and ERP is to have GP login credentials, which only TREK employees can receive, as well as the computer configuration that is set up only by TREK's IT department on TREK workstation computers.

67.     Upon information and belief, ITR repeatedly accessed the ERP system.

68.     Upon information and belief, ITR accessed TREK's computer, specifically the EZQUOTE system, the GP System, and ERP without authorization to access and obtain valuable TREK's confidential, proprietary and trade secretion information.

69.     Upon information and belief, ITR needed TREK's confidential, proprietary, and trade secret information to compete with TREK, including, without limitation, submitting a quote to Brandt Tractor.

70.     Upon information and belief, ITR is using the confidential, proprietary, and trade secret information it has misappropriated from TREK to compete with TREK. For instance, TREK has recently learned from unrelated third parties that ITR is submitting quotes to current and potential customers using TREK's own unique reference number, which is not publicly known. Notably, the items in the ITR quotes for which ITR uses TREK's unique reference number are not popular items, making ITR's use of the TREK's unique reference number even more peculiar (and suspect). In addition, upon information and belief, ITR is using TREK's confidential, proprietary, and trade secret information to develop an inventory strategy to process and categorize their competing product. As a result,

when ITR now types a TREK reference number into the ITR system, the ITR system will pull an ITR product that will compete with TREK's product.

71.      Upon information and belief, Defendants have willfully used and disclosed TREK's confidential, proprietary and trade secret information for their own personal benefit and/or for the benefit of ITR, TREK's competitor. Defendants knew that TREK considered and treated such information as confidential, proprietary, and a trade secret. Defendants also knew, or should have known, that TREK expended significant time, effort, and resources in maintaining and developing its inventory, technical, and customer information databases, which Defendants have wrongfully usurped.  Below is a chart summarizing the relevant facts regarding Defendants' misappropriation known to date:

| Defendants | Former Position | Current Position | Issues | Confidentiality |
|---|---|---|---|---|
| Mark Davis | TREK's Branch Manager (MI)<br><br>Sales & Purchasing<br><br>Left Trek, 7/22/2016 | ITR employee<br><br>Rubber Track Purchasing | Downloaded major files mostly related to Rubber Track, and then deleted the files from the computer's hard drive as well as log record | Signed on Corporate Handbook agreeing to maintain confidentiality<br><br>(Took original confidential agreement when left TREK) |
| James Marcum | TREK's Branch Manager (NV); frequently engaged in business in | ITR employee<br><br>Warehouse | Downloaded major files and then deleted the from the computer | Signed confidentiality Agreement |

| | Michigan Sales Left Trek, 6/3/2016 | manager | Data is about customer information, inventory and technological knowledges which relates to the business directly | |
|---|---|---|---|---|
| Andrew Andres | Brandt Tractor Employee Brandt is TREK's over-all NO 1 customer Left Brandt at Dec, 2015 Product control management; was in charge of TREK purchasing | ITR employee Sales | Gave ITR TREK's valuable information, including pricing and item number of each total items, which has enabled ITR to develop a new inventory system to allow it to compete with TREK | <Confidential> was written in every email, Quote & Invoice |
| ITR | | | ITR accessed TREK's EZQUOTE system, GP System and ERP without authorization to obtain valuable confidential, proprietary and trade secret information ITR receives TREK's intellectual property and uses it to compete and/or take TREK's business | |

72. In addition to the information intentionally misappropriated as described more fully above, the full scope of TREK's confidential, proprietary and trade secret information misappropriated by ITR is currently unknown.

73.    To date, TREK as incurred costs of between $5,000 to $10,000 on forensic experts to understand the scope of Defendants' unauthorized access and to prevent similar instances in the future.

74.    Defendants' use and disclosure of TREK's confidential, proprietary and trade secret information constitutes a violation of Defendants' obligations to TREK under applicable law.

## COUNT I – BREACH OF FIDUCIARY DUTY (AGAINST MARCUM AND DAVIS)

75.    TREK incorporates herein all other allegations of this First Amended Verified Complaint.

76.    As former employees of TREK, Marcum and Davis all owed TREK fiduciary obligations under Michigan and common law, both before and after resignation from TREK's employment.

77.    Marcum and Davis breached their fiduciary obligations to TREK by virtue of the conduct alleged in this First Amended Verified Complaint, including, without limitation, by intentionally taking and using and/or disclosing confidential, proprietary and trade secret information to the detriment of TREK.

78.    As a direct and proximate result of their breaches of the fiduciary duties to TREK, TREK has suffered, and will continue to suffer, damages.

23

## COUNT II – BREACH OF CONTRACT (AGAINST MARCUM AND DAVIS)

79.     TREK incorporates herein all other allegations of this First Amended Verified Complaint.

80.     As former employees of TREK, Marcum and Davis all signed contracts agreeing to maintain the secrecy and confidentiality of TREK's confidential, proprietary, and trade secret information. (**Exs. 1& 2**).

81.     Marcum and Davis breached their contracts with TREK by virtue of the conduct alleged in this First Amended Verified Complaint, including, without limitation, by intentionally taking and using and/or disclosing confidential, proprietary and trade secret information to the detriment of TREK.

82.     As a direct and proximate result of their breaches of contract, TREK has suffered, and will continue to suffer, damages.

## COUNT III – VIOLATION OF THE MICHIGAN UNIFORM TRADE SECRETS ACT, MICH. COMP. LAWS § 445.1901 *ET SEQ.* (AGAINST ALL DEFENDANTS)

83.     TREK incorporates herein all other allegations of this First Amended Verified Complaint.

84.     Among other things, customer lists and customer purchasing needs, detailed product pricing information and product information, sales data, and

24

information pertaining to inventory management and technical systems are confidential information and trade secrets pursuant to Mich. Comp. Laws § 445.1902.

85.    As set forth in this First Amended Verified Complaint, Davis, in his former position as TREK's branch manager, acquired knowledge of information of TREK's that constitutes a "trade secret" under the Michigan Uniform Trade Secrets Act, as that information (1) derives independent economic value from not being generally known to, and not readily ascertainably by proper means by, other persons who could obtain economic value from its disclosure or use, and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. (*See* **Ex. 1**).

86.    As set forth in this First Amended Verified Complaint, Marcum, in his former position as TREK's branch manager, acquired knowledge of information of TREK's that constitutes a "trade secret" under the Michigan Uniform Trade Secrets Act, as that information (1) derives independent economic value from not being generally known to, and not readily ascertainably by proper means by, other persons who could obtain economic value from its disclosure or use, and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.  (*See* **Ex. 2**).

87.    At all times, TREK has taken steps which were reasonable under the circumstances to maintain the secrecy and confidentiality of the information and maintain care with any documents embodying same, requiring password access to TREK's computer databases, confidentiality agreements, and limiting access to sensitive information, among other things.

88.    Davis and Marcum both knew or had reason to know that TREK considered and treated the information entrusted to them as confidential and secret.

89.    Upon information and belief, ITR hired Davis and Marcum for the wrongful purpose of obtaining TREK's trade secrets, which Davis and Marcum wrongfully disclosed to ITR in violation of their duties to maintain the secrecy of such information.

90.    Upon information and belief, ITR has improperly accessed TREK's EZQUOTE, GP System, and ERP, specifically without authorization, to obtain confidential, proprietary, and trade secret information.

91.    ITR is using TREK's trade secret information in order to compete with TREK.

92.     Defendants' conduct constitutes misappropriation of trade secrets pursuant to Michigan's Uniform Trade Secrets Act, Mich. Comp. Laws § 445.2902 *et seq*.

93.     At the time of such improper misappropriation of TREK's trade secrets and other confidential and proprietary information, Defendants knew or had reason to know that their knowledge was acquired under circumstances giving rise to a duty to maintain the secrecy of the information.

94.     Defendants' misappropriation of TREK's trade secrets was willful and malicious.

95.     As a direct and proximate result of Defendants' malicious misappropriation, TREK has sustained and continues to sustain irreparable harm and is entitled to recovery of the damages requested, including attorney fees.

## COUNT IV – VIOLATION OF THE DEFEND TRADE SECRETS ACT OF 2016, 18 U.S.C. § 1836(B) (AGAINST ALL DEFENDANTS)

96.     TREK incorporates herein all other allegations of this First Amended Verified Complaint.

97.     Among other things, customer lists and customer purchasing needs, detailed product pricing information and product information, sales data, and

information pertaining to inventory management and technical systems are confidential information and trade secrets.

98.    These trade secrets relate to TREK products used in interstate commerce.

99.    As set forth in this First Amended Verified Complaint, Davis, in his former position as TREK's branch manager, acquired knowledge of information of TREK's that constitutes a "trade secret" as that information (1) derives independent economic value from not being generally known to, and not readily ascertainably by proper means by, other persons who could obtain economic value from its disclosure or use, and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.  (*See* **Ex. 1**).

100.    As set forth in this First Amended Verified Complaint, Marcum, in his former position as TREK's branch manager, acquired knowledge of information of TREK's that constitutes a "trade secret" as that information (1) derives independent economic value from not being generally known to, and not readily ascertainably by proper means by, other persons who could obtain economic value from its disclosure or use, and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.  (*See* **Ex. 2**).

101.   At all times, TREK has taken steps which were reasonable under the circumstances to maintain the secrecy and confidentiality of the information and maintain care with any documents embodying same, requiring password access to TREK's computer databases, confidentiality agreements, and limiting access to sensitive information, among other things.

102.   Davis and Marcum both knew or had reason to know that TREK considered and treated the information entrusted to them as confidential and secret.

103.   Upon information and belief, ITR hired Davis and Marcum for the wrongful purpose of obtaining TREK's trade secrets, which Davis and Marcum wrongfully disclosed to ITR in violation of their duties to maintain the secrecy of such information.

104.   Upon information and belief, ITR has improperly accessed TREK's EZQUOTE, GP System, and ERP, specifically without authorization, to obtain confidential, proprietary, and trade secret information.

105.   ITR is using TREK's trade secret information in order to compete with TREK.

106.   Defendants' conduct constitutes misappropriation of trade secrets pursuant to the Defend Trade Secrets Act of 2016.

107.   At the time of such improper misappropriation of TREK's trade secrets and other confidential and proprietary information, Defendants knew or had reason to know that their knowledge was acquired under circumstances giving rise to a duty to maintain the secrecy of the information.

108.   Defendants' misappropriation of TREK's trade secrets was willful and malicious.

109.   As a direct and proximate result of Defendants' malicious misappropriation, TREK has sustained and continues to sustain irreparable harm and is entitled to recovery of the damages requested, including attorney fees.

## COUNT V – COMMON LAW UNFAIR COMPETITION (AGAINST ALL DEFENDANTS)

110.   TREK incorporates herein all other allegations of this First Amended Verified Complaint.

111.   The acts and conduct of Defendants alleged in this First Amended Verified Complaint constitute unfair competition under Michigan common law.

112.   Defendants' acts and conduct as alleged above have damaged and will continue to damage TREK's goodwill and reputation and have resulted in losses to TREK and illicit gain of profit to Defendants in an amount which is unknown at the present time.

113.   As a direct and proximate result of Defendants' improper actions and unfair competition as set forth herein, TREK has suffered and continues to suffer damages and is entitled to recover of the damages requested below.

**COUNT VI – UNJUST ENRICHMENT (AGAINST ALL DEFENDANTS)**

114.   TREK incorporates herein all other allegations of this First Amended Verified Complaint.

115.   As a result of Defendants' wrongful activities as fully described in this First Amended Verified Complaint, Defendants have been unjustly enriched.

116.   Such unjust enrichment includes, as to Davis and Marcum, any compensation they received during the time they were breaching their fiduciary duties and/or contracts to TREK or otherwise committing wrongful acts, and as to ITR, all profits ITR derived through use of TREK's confidential, proprietary, and trade secret information and/or soliciting TREK's customers or prospective customers.

117.   Retention of such benefits by Defendants is inequitable.

**COUNT VII – TORTIOUS INTERFERENCE WITH AN ADVANTAGEOUS BUSINESS RELATIONSHIP OR EXPECTANCY (AGAINST ALL DEFENDANTS)**

118.   TREK incorporates herein all other allegations of this First Amended Verified Complaint.

119.   TREK has and will continue to have contractual, business, and/or advantageous business relationships or expectancies with its customers.

120.   TREK has and expects to continue having an economic benefit from these relationships.

121.   Defendants have actual knowledge of these contractual, business, and/or advantageous business relationships or expectancies.

122.   As a result of Defendants' wrongful activities as fully described in this First Amended Verified Complaint, Defendants have intentionally and improperly interfered with these relationships by maliciously misappropriating TREK's trade secrets and other confidential and proprietary information to use for their own benefit.

123.   As a direct and proximate result of Defendants' intentional and improper actions. TREK's business relationships and/or expectancies have been breached, disrupted, or terminated.

**COUNT VIII – STATUTORY AND COMMON LAW CONVERSION**
**(AGAINST MARCUM AND DAVIS)**

124.   TREK incorporates herein all other allegations of this First Amended Verified Complaint.

125.   Marcum's and Davis' actions, as described in this First Amended Verified Complaint, constitute a wrongful conversion of TREK's property in violation of common law and Mich. Comp. Laws § 600.2919(a).

126.   As set forth herein, Marcum and Davis wrongfully took control of and exerted dominion over TREK's trade secrets and other confidential and proprietary information.

127.   Marcum and Davis wrongfully converted the subject property for their own purposes without lawful right.

128.   Despite TREK's demand for return of TREK's property upon Marcum's and Davis' termination of employment, Defendants have failed and neglected to return TREK's property.

129.   Pursuant to Mich. Comp. Laws § 600.2919(a), TREK is entitled to treble damages plus costs and attorney fees as a result of Marcum's and Davis' conversion of subject property.

**COUNT IX – VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030 *ET SEQ.* (AGAINST ALL DEFENDANTS)**

130.   TREK incorporates herein all other allegations of this First Amended Verified Complaint.

131.   TREK utilizes protected computers in its interstate and foreign commerce activities, which are connected to the internet.

132.   Marcum and Davis had access to Trek's protected computers.

133.   Upon information and belief, prior to leaving his position as branch manager for TREK, in violation of TREK policy, Davis and Marcum intentionally accessed TREK's computer without authorization or in a manner that exceeded authorization to download and thereafter delete all files on TREK's computer.   In doing so, Marcum and Davis knowingly and with the intent to defraud obtained confidential, proprietary, and trade secret information of value.

134.   As a result of Marcum's and Davis' unauthorized access and/or access in a manner that exceeded their authorized access, TREK has suffered damages and loss.

135.   Furthermore, upon information and belief, ITR has improperly accessed TREK's EZQUOTE, GP System, and ERP, specifically without authorization, to obtain confidential, proprietary, and trade secret information.

136.   Upon information and belief, ITR, knowingly and with intent to defraud, accessed TREK's computers via without authorization and by means of such conduct furthered the intended fraud and obtained information of value.

137.   As a result of ITR's unauthorized access, TREK has suffered damages and loss.

## RELIEF REQUESTED

WHEREFORE, TREK respectfully requests that this Court grant TREK the following relief:

i)  an injunction preventing Defendants from accessing TREK's computers, including, without limitation, the EZQuote system, GP System, and ERP;

ii)  an injunction preventing Defendants from further use or disclosure of the trade secrets and other confidential and proprietary information;

iii)  an injunction requiring the destruction of all the trade secrets and other confidential and proprietary information in Defendants' possession;

iv)  damages in an amount to be proven at trial for the actual loss caused by Defendants' improper conduct;

v)  exemplary damages;

vi) attorney fees and costs; and

vii)     any other relief the Court deems appropriate.


Respectfully submitted,

*/s/  John S. Artz*
John S. Artz (P48578)
Chelsea M. Smialek (P80015)
DICKINSON WRIGHT PLLC
2600 W. Big Beaver Rd., Ste. 300
Troy, Michigan 48084
(248) 433-7200
jsartz@dickinsonwright.com

*Attorneys for Plaintiff*

Dated: November 3, 2016

## **VERIFICATION**

I declare that the above statements are true to the best of my knowledge, information and belief, under penalty of perjury.

TREK, Inc.

By: Jin Mo Hong

Its: COO

DETROIT 45842-19 1405434v3

37